1   KAMALA D. HARRIS, State Bar No. 146672
    Attorney General of California
2   FIEL D. TIGNO, State Bar No. 161195
    Supervising Deputy Attorney General
3   COURTNEY S. LUI, State Bar No. 173064
    Deputy Attorney General
4     1515 Clay Street, 20th Floor
      P.O. Box 70550
5     Oakland, CA  94612-0550
      Telephone:  (510) 622-2115
6     Fax:  (510) 622-2270
      E-mail: Courtney.Lui@doj.ca.gov
7   *Attorneys for CA Department of Consumer Affairs*

8                   IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11

12  | SHELA BARKER, | Case No. |
    |---|---|
13  | Plaintiff, | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(a) [FEDERAL QUESTION]** |
14  | v. | |

15

16  STATE OF CALIFORNIA; DEPARTMENT OF
    CONSUMER AFFAIRS, A PUBLIC ENTITY;
    DONALD CHANG, AND ANITA SCURI, AS
17  INDIVIDUAL DEFENDANTS; AND DOES 1-25,
    INCLUSIVE,

18

19                                      Defendants.

20        TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21        PLEASE TAKE NOTICE that defendant the CALIFORNIA DEPARTMENT OF

22  CONSUMER AFFAIRS hereby removes to this Court the state court action described below.

23        1.    On March 19, 2015, an action was commenced in the Superior Court of the State of

24  California, County of Sacramento, entitled *Shela Barker, Plaintiff, vs. State of California;*

25  *Department of Consumer Affairs, a public entity; Donald Chang and Anita Scuri, as individual*

26  *Defendants, and Does 1 to 25, inclusive, Defendants*, and assigned case number 34-2015-

27  00176766.  Attached hereto as **Exhibit A** is a copy of the Complaint and the following

28  attachments:  Civil Case Cover Sheet; Notice of Case Management Conference and Order to

                                      1

1  Appear; Program Case Notice; Alternative Dispute Resolution Information Package.  Attached

2  hereto as **Exhibit B** is a copy of the Summons.

3      2.    The first date upon which any defendant was served was May 22, 2015, when

4  defendant the California Department of Consumer Affairs, erroneously sued as "State of

5  California," was served with the said summons and complaint, via its attorneys at the California

6  Department of Justice, Office of the Attorney General.  A copy of the California Department of

7  Justice's Civil Process of Service Cover Sheet acknowledging receipt of the personal service of

8  said summons and complaint is attached hereto as **Exhibit C**.

9      3.    This action is a civil action of which this Court has original jurisdiction under 28

10  U.S.C. §1331, and is one which may be removed to this Court by defendants pursuant to the

11  provisions of 28 U.S.C. section 1441(a), in that Complaint arises under (among others) the

12  Family Medical Leave Act, 26 U.S.C. §2617(a).  The Eastern District of California, Sacramento

13  Division, is the proper venue for this action because this action arose in Sacramento County and

14  was originally filed in Sacramento County Superior Court.

15      4.    To date, and to the best of its knowledge, the Department of Consumer Affairs is the

16  only named defendant that  has been served with the summons and complaint.  Therefore, the

17  other named defendants, Donald Chang and Anita Scuri, have not joined in this removal because

18  they have not been served.

19  Dated:  June 18, 2015                Respectfully submitted,

20                                    KAMALA D. HARRIS

21                                    Attorney General of California

22                                    */s/ Courtney S. Lui*
                                  COURTNEY S. LUI

23                                    Deputy Attorney General
                                  *Attorneys for CA Department of Consumer*

24                                    *Affairs*

25  OK2013901580
   90523886.doc

26

27

28

# Exhibit A

1   Shela Barker
    PO Box 15054
2   Sacramento, CA 95851
    (916) 538-2009
3
4   Shela Barker, IN PRO PER

5

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF SACRAMENTO

10

11  SHELA BARKER,                          Case No.:

12                     Plaintiff(s),       COMPLAINT FOR MONETARY AND
                                           PUNITIVE DAMAGES
13          vs.
                                           1.   Disability Discrimination Based on
14  STATE OF CALIFORNIA; DEPARTMENT OF          Physical and/or Mental Disability and
    CONSUMER AFFAIRS, a public entity;          Failure to Provide Reasonable
15  DONALD CHANG, and ANITA SCURI, as           Accommodations in Violation of Fair
    individual Defendants; and Does 1-25, inclusive,   Employment and Housing Act ("FEHA")
16                                              [Gov. Code § 12940(a) and (m)]
                                           2.   Failure to Engage in Good Faith
17                                              Interactive Process in Violation of FEHA
                                                [Gov. Code § 12940(n), et. seq.]
18                     Defendant(s).       3.   Hostile Work Environment - Harassment
                                                [Gov. Code § 12940(j), et. seq.]
19                                         4.   Retaliation in Violation of FEHA [Gov.
                                                Code §12940(g), et. seq.]
20                                         5.   Failure to Prevent Discrimination and
                                                Harassment in violation of FEHA [Gov.
21                                              Code § 12940(j) and (k), et. seq.]
                                           6.   Unlawful Denial or Interference with
22                                              Exercising Rights under the California
                                                Family Rights Act ("CFRA") [Gov.
23                                              Code § 12945.2
                                           7.   Unlawful Denial or Interference with
24                                              Exercising Rights under the Family
                                                Medical Leave Act ("FMLA") [26
25                                              U.S.C. §2617(a)]
                                           8.   Intentional Infliction of Emotional
26                                              Distress

27

28

**FILED**
Superior Court Of California,
Sacramento
03/19/2015
emedina
By_____, Deputy
Case Number:
**34-2015-00176766**

# Exhibit A

- 1 -

## I.

## PARTIES

1.　At all times relevant for the purposes of this Complaint, Plaintiff, SHELA BARKER ("Plaintiff") has been a resident of the State of California.

2.　Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendants STATE OF CALIFORNIA and DEPARTMENT OF CONSUMER AFFAIRS ("DCA"), were and are an "employer" as defined by California Government Code Sections 12926(d), 12940(a), 12940(h), and 12940(j)(4)(A).

3.　Defendant Donald Chang ("Chang") was, and at all relevant times was, Supervising Staff Counsel III or Assistant General Counsel, for DCA and Plaintiff's direct reporting supervisor from December 1, 2005, through November 1, 2008 and again from July 31, 2012 through January 2, 2013.

4.　Defendant Anita Scuri ("Scuri") was, and at all relevant times was, Supervising Staff Counsel III for DCA and Plaintiff's direct reporting supervisor from November 2, 2008 through to her retirement on June 30, 2012.

5.　Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 25, inclusive, and therefore sues Defendants by such fictitious names. Defendants DOES 1 through 25, at all times relevant for the purposes of this Complaint were employees, agents, officers and/or members of the Board of Defendants. Plaintiff will amend this complaint to allege the true names and capacities of the Defendants designated herein as DOES 1 through 25, inclusive, when they have been ascertained. Plaintiff is informed and believes and on that basis alleges that said Defendants, and each of them, responsible in whole or part, for Plaintiff's damages.

6.　Plaintiff is informed and believes, and on that basis alleges, that at all relevant times for purposes of this Complaint, the Defendants designated herein as DOES 1 through 25, inclusive, acted as the agents, employees, directors, officers, co-ventures, and partners of the named Defendants and such fictitiously named Defendants, each of them, while acting in the course and scope of their agency, employment, corporate capacities, and partnership, perform the acts and

- 2 -

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1  conduct hereinafter alleged, and said acts and conduct were ratified and approved by each

2  Defendant.

3                                          II.

4                                   JURISDICTION

5       7.      Defendants, State of California, Department of Consumer Affairs, Chang, Scuri,

6  and/or DOES 1 through 25 are subject to suit under the California Fair Employment and Housing

7  Act ("FEHA") as they regularly employ five or more persons in the State of California. [Gov. Code

8  §12926(d).]  FEHA prohibits discrimination, harassment, and retaliation on the basis of disability,

9  race, sex, color, national origin, ancestry, and age, among other acts, by an employer against an

10  employee.

11      8.      Plaintiff has exhausted all administrative remedies necessary and has timely brought

12  this action. Plaintiff's Right to Sue Notice is attached hereto as Exhibit 1.

13      9.      This Court has jurisdiction to hear both statutory and common law claims against

14  Defendants and DOES 1 through 25.

15                                         III.

16                   FACTS COMMON TO ALL CAUSES OF ACTION

17      10.     Plaintiff has been an employee and staff counsel/attorney of Defendant DCA since

18  December 1, 2005.

19      11.     Plaintiff is a person with disabilities.

20      12.     At all times relative to this Complaint, Plaintiff was an employee covered by the

21  California Family Rights Act ("CFRA"), Government Code §12945.2(a) and FEHA.

22      13.     At all times relative to this Complaint, Plaintiff was an employee covered by the

23  Family Medical Leave Rights Act ("FMLA"), 26 U.S.C. §2617(a).

24      14.     In or about August or September 2007, Plaintiff submitted a request to Defendant

25  DCA's Office of Human Resources, Health and Safety Unit, for FMLA/CFRA intermittent leave,

26  for migraines. This request was approved by the Health and Safety Unit beginning in late 2007 and

27  continuing through approximately August 2008.

28

- 3 -

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

15.     Plaintiff was then utilizing approximately 8 to 12 hours per month of intermittent FMLA/CFRA leave for both medical appointments and treatment of her migraine condition.

16.     In or about February 2008, Defendant Chang began to verbally admonish Plaintiff for needing protected leave and accused Plaintiff of carelessly causing her disability and therefore, the need for leave. On one day in February 2008, Chang called Plaintiff into his office to inquire why she had sent an email to support staff the evening before. He accused her of failing to take care of herself and not following her doctor's orders regarding self-care. He accused her of working too late in the evening and purposefully causing migraine events. Plaintiff was confused as to why Chang was telling her she was not following her doctor's instructions regarding self-care because Plaintiff had never had any conversations with Chang, or anyone else at DCA, regarding those medical instructions, nor had she ever provided Chang or anyone else at DCA with written copies of those medical instructions. Chang's verbal admonishment for utilizing FMLA/CFRA leave occurred on nearly every occasion she utilized such leave.

17.     In or about May 2008, Plaintiff contacted DCA's Equal Employment Opportunity Officer, Hilda Youngblood ("Youngblood"), to inquire about the possibility of mediation related to Chang's ongoing verbal admonishment. Youngblood informed Plaintiff that she would look into the mediation program offered by the State Personnel Board on behalf of Plaintiff.

18.     In or about June 2008, Youngblood contacted Plaintiff and explained the mediation program was not accepting new participants due to the state's budget issues. Youngblood explained that she would explore other options. Plaintiff requested Youngblood find a solution quickly due to the effect Chang's behavior was having on her health. However, no mediation was ever scheduled or offered to Plaintiff.

19.     In or about August 2008, Plaintiff was placed on medical leave by her healthcare providers due to a stress reaction she suffered as a result of Chang's ongoing admonishments related to her use of protected leave. This medical leave continued until the beginning of November 2008.

20.     In anticipation of returning to work in November 2008, Plaintiff scheduled a meeting with Deputy Director Doreathea Johnson ("Johnson"), General Counsel to DCA. Plaintiff explained

1    to Johnson that she was requesting that Chang no longer be assigned as her direct report supervisor.

2    Scuri also attended this meeting.

3       21.    Once Plaintiff returned to work in early November 2008, Scuri was assigned as her

4    supervisor.

5       22.    Subsequent to her return to work in early November 2008, Chang purposefully

6    avoided any interactions with Plaintiff unless Johnson and Scuri were absent.

7       23.    In or about April 2009, upon the advice of her physicians, Plaintiff requested that

8    DCA make minor modifications to the lighting in her office through the reasonable accommodation

9    process. She specifically requested "dot matrix lighting" which is a reusable celluloid filter placed

10   over the individual fluorescent bulbs in the lighting fixture. She also requested that the light switch

11   in her office be converted from an occupancy switch to a vacancy switch.

12      24.    On or about April 29, 2009, DCA's Health and Safety Unit approved Plaintiff's

13   request for accommodations for both dot matrix lighting and an alternative light switch.

14      25.    Between April 29, 2009, and January 2010, DCA failed to cause the installation of

15   either dot matrix lighting or the alternative light switch in Plaintiff's workspace. During this time

16   period, Plaintiff requested that her Supervisor, Scuri, facilitate the installation of these items on no

17   less than four (4) occasions. Upon each request, Scuri feigned surprise that the installation had not

18   already occurred and indicated to Plaintiff that she would look into why the accommodations had

19   not yet been provided. Despite these assurances, the accommodations were never actually provided.

20      26.    On or about December 29, 2009, Plaintiff submitted a written notice to Johnson, in

21   the form of a memorandum, that the previously approved accommodations had not yet been

22   provided, that the accommodations had been approved over nine (9) months prior, and requested

23   that Johnson facilitate the provision of the accommodations.

24      27.    The lighting accommodation for Plaintiff's workspace was not provided until near

25   the end of January 2010.

26      28.    On the same day she submitted the formal written request to Johnson to provide the

27   previously approved accommodations, Plaintiff submitted her first workers' compensation claim for

28   injuries related to the failure to provide approved reasonable accommodations.

29.     As of December 1, 2009, Plaintiff was eligible for a pay raise pursuant to state law known as a "range change." DCA failed to timely implement this pay raise and failed to provide an explanation as to why the pay raise was not being provided, as required by Plaintiff's bargaining unit agreement. Plaintiff made inquiries to Scuri as to why the pay raise was not implemented. Instead of receiving a range change pay raise, Plaintiff instead received a merit salary pay change which was less than the pay increase she was eligible for under the pay range change.

30.     In late February 2010, Plaintiff was called out of her office by two employees of DCA's Division of Investigation.   These employees are sworn law enforcement officers. These employees proceeded to interrogate Plaintiff for over an hour regarding an allegation made by Johnson and reported to them in late January 2010; they allege that the Plaintiff had supposedly threatened to kill Johnson on January 6, 2010. Plaintiff was not physically present in the workplace on that date and told the employees interrogating her that fact as well as denying that she had ever threatened harm to Johnson. The employees of the Division of Investigation failed to read Plaintiff either her Miranda rights or her Lybarger rights.

31.     On March 1, 2010, Scuri issued a lengthy counseling memo to Plaintiff, accusing Plaintiff again of the supposed death threat made against Johnson, as well as another incident which supposedly occurred in early December 2009. This memorandum was issued in violation of unwritten DCA policy that requires counseling memorandums to be issued as close in time as is practicably possible for alleged improper employee conduct.

32.     In April 2010, after making inquiries at DCA's Office of Human Resources, regarding the fact that a pay range change had not been processed and that the appropriate pay had not been issued, paperwork was sent to Scuri for the pay range change. Scuri provided a written response to the request for the range change in or about June 2010. Scuri's denial was not based upon the March 1, 2010 counseling memorandum, rather it was based upon an allegation that Plaintiff had failed to provide appropriate legal services to her clients during the review period. Plaintiff disputed this and provided written substantiation of her work product between December 1, 2008, and December 1, 2009. While Scuri eventually changed her denial to an approval, the pay

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1   range change was implemented only from April 1, 2010, instead of the actual eligibility of
2   December 1, 2009.

3       33.   Over the course of 2009 through 2011, Plaintiff's health deteriorated further as a
4   result of the stress she was placed under by DCA's failure to timely provide reasonable
5   accommodations and DCA and her DCA supervisors conduct towards her.  In late 2009, Plaintiff
6   developed a gastrointestinal disorder, losing more than 30 pounds, due to uncontrollable
7   regurgitation of food. On the day before Thanksgiving 2010, Plaintiff developed shingles. During
8   2010, Plaintiff's migraine condition worsened, resulting in the more frequent need for protected
9   leave under CFRA/FMLA.

10       34.   In July 2011, Plaintiff's physician provided additional medical documentation,
11   recommending that Plaintiff be placed on a partial telecommute schedule and that on her in-office
12   days, she be allowed to start work later in the morning. This was recommended because the
13   frequency and severity of Plaintiff's migraine attacks were increasing, resulting in increasing
14   absences from the workplace. The reasonable accommodation was expected to allow Plaintiff better
15   control over her migraine condition and lessen the need for work absences.

16       35.   In September 2011, Scuri served a Notice of Adverse Action upon Plaintiff in the
17   middle of a public board meeting of the Physical Therapy Board of California. The Notice of
18   Adverse Action was served for conduct related to the committee meeting of the Veterinary Medical
19   Board of California on August 17, 2011. Plaintiff was suspended for three (3) weeks losing pay and
20   benefits during that time. Other attorneys of DCA were not disciplined for similar or identical
21   conduct. The discipline imposed was greater than that which was authorized under DCA's
22   personnel policy. The personnel policy authorized no more than a formal reprimand.

23       36.   Despite the DCA alleging that Plaintiff had engaged in misconduct related to her
24   provision of legal services to the Veterinary Medical Board of California, the Veterinary Medical
25   Board did not request that Plaintiff no longer be assigned as their legal counsel.

26       37.   On January 19, 2012, Plaintiff submitted a formal written request for reasonable
27   accommodations, consisting of a partial telecommute schedule and an alternative work schedule.
28   Plaintiff provided the medical documentation generated by her physician in July 2011. In addition

-7-

1   to these specific reasonable accommodations. Plaintiff made other suggestions to DCA and Scuri

2   for alternatives to the telecommute request. These alternatives included a request for a fragrance

3   free policy in the legal department, a restriction of the consumption of strong smelling foods in the

4   legal department break room with the break room door closed, repairs to the HVAC balancing issue

5   that plagued the Department since the Department had occupied the building in December 2005,

6   installation of dot matrix lighting in all florescent lighting fixtures in the legal department, and other

7   various accommodations that would have allowed Plaintiff to physically work in the office, free

8   from migraine triggers.

9       38.   Scuri approved the alternative work schedule but ignored the request for a partial

10   telecommute schedule.   Scuri and DCA also failed to implement any of the reasonable

11   accommodations requested as an alternative to telecommuting.

12       39.   In March 2012, Plaintiff suffered a very severe migraine lasting multiple days. As

13   with other migraines triggered during her time in the workplace, this migraine resulted from

14   environmental factors and stress imposed upon Plaintiff by her employer. On the second day of this

15   migraine attack, a Thursday, Plaintiff left a lengthy voicemail message on the main telephone line

16   when she called in sick. That message contained instructions to support staff to provide specific

17   information to the Administration Services Team lead, Norine Marks ("Marks"). The information

18   was not forwarded to Marks. When Plaintiff returned to the office the following Monday, Marks

19   was upset because certain tasks had not been taking care of while Plaintiff was out of the office ill

20   the prior week. Marks sent Plaintiff an email accusing Plaintiff of failing to call Marks directly or

21   to send her an email regarding the instructions which were left in the voicemail. Plaintiff did not

22   have the ability to send an email directly to Marks during this time due to a change related to

23   DCA's email servers which occurred at the same time she was out of the office ill.

24       40.   When Plaintiff inquired of Marks why she was sending Plaintiff what was essentially

25   a counseling memo for utilizing FMLA/CFRA leave despite the fact that Marks was not her

26   supervisor and therefore not authorized to send a counseling memo, Marks stated that Scuri had

27   instructed her to do so.

28

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

41.   On April 10, 2012, as a result of the continued failure of DCA and her supervisors to provide reasonable accommodations and respect the use of protected leave under FMLA/CFRA, Plaintiff suffered a severe stress reaction necessitating the intervention of medical providers. As of that date, April 10, 2012, Plaintiff was placed on a restricted schedule by healthcare providers and Plaintiff was forced to file a second workers' compensation claim.

42.   In or about May 2012, the interior of the building housing DCA was painted. This painting occurred also in the Legal Affairs offices. Plaintiff, as soon as the announcement was made regarding the schedule of painting, notified Scuri of the need for reasonable accommodations due to the paint fumes. Originally, Plaintiff was told that she would be allowed to work from the offices of the Physical Therapy Board of California, which was in a building not scheduled for painting. Plaintiff reported for work at the Physical Therapy Board of California on a Monday morning. She was anticipating being at this location for one week. The next day, a Tuesday, Plaintiff was required by her Supervisor, Scuri, to report to the Legal Affairs Office in DCA's building. At that time, the fumes from the paint were still very heavy in the air; Plaintiff became ill and suffered a migraine as a result. Plaintiff was instructed not to return to the offices of the Physical Therapy Board and that other arrangements had been made. At approximately 2 PM that afternoon, Plaintiff was escorted by Chang to the offices of the Board of Registered Nursing. He took her to an office that had a desk but no other office equipment in it. There was no phone, no computer, no printer, no pens, paper, or other general office supplies in this office. Chang instructed Plaintiff to work from this office for the remainder of the week. The support staff for the Executive Officer of the Board was surprised to learn that the Plaintiff was in the building on Tuesday, as they were told not to expect the Plaintiff before Wednesday of that week. It was not until late in that week that Plaintiff was provided with the equipment to perform her duties, however, the computer equipment provided had no connectivity to any printers and the phone provided had its telephone number changed multiple times over the remainder of that week. Furthermore, as a result of the lack of the appropriate equipment, Plaintiff was forced to return to the Legal Affairs office while the paint fumes were still present. This resulted in further illness for Plaintiff. Other employees of the Legal Affairs Division were permitted to work from home or work from their clients' offices to avoid the noxious fumes.

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1      43.    In or about June, 2013, Plaintiff's assignment as counsel to the Physical Therapy

2 Board of California was removed. Plaintiff is informed and believes that this assignment change

3 was undertaken because the Executive Officer of the Physical Therapy Board of California offered

4 to house Plaintiff at the Physical Therapy Board's offices in order to facilitate effective legal

5 services while Plaintiff was working a reduced schedule.

6      44.   On June 30, 2012, Scuri retired from state service. The position she had occupied as a

7 supervisor was left vacant. As a result, Plaintiff was required to report to Chang, who had been

8 promoted to Assistant General Counsel, for supervision.

9      45.    In or about June 2012, Plaintiff was contacted by the Health and Safety Analyst,

10 Leandrea Fitzgerald (Fitzgerald), assigned to her workers' compensation claims, reasonable

11 accommodation requests, and FMLA/CFRA leave requests. Fitzgerald informed Plaintiff that she

12 was confused with regard to how Plaintiff was reporting her time on a monthly basis to the Health

13 and Safety Unit. Plaintiff informed Fitzgerald that she had been instructed to do so by Scuri.

14 Fitzgerald informed Plaintiff that she was not required to utilize FMLA/CFRA for the workers'

15 compensation claim. Thereafter a meeting was scheduled between Plaintiff, Fitzgerald, another

16 member of DCA's Office of Human Resources, and Roseanna Leon. During that meeting, Plaintiff

17 was instructed again that she need not use FMLA/CFRA related to the workers'; compensation

18 claim medical restrictions. Plaintiff was instructed that she could reserve her FMLA/CFRA leave

19 for her migraine condition.

20      46.    During the Summer of 2012, Plaintiff suffered from a recurrence of shingles.

21 However, this was not immediately apparent to her physicians. Plaintiff was seen a number of times

22 by her physicians to determine what physical ailment she was then suffering from. As a result,

23 Plaintiff received a number of tentative diagnosis, including kidney stones, and a back injury. Every

24 time Plaintiff was required to take medical leave for these appointments, she was required to present

25 written substantiation to Chang. When she submitted these medical notes to Chang, he was overtly

26 hostile towards her. He made comments such as "what is the disease de joure."

27      47.    On or about September 6, 2012, Plaintiff learned that Fitzgerald was no longer in

28 charge of her workers' compensation claim, her reasonable accommodations requests, or her

1   CFRA/FMLA leave requests. Instead, Teresa Cliborne ("Cliborne") had been assigned to Plaintiff's

2   files. Plaintiff learned of this change in personnel, when Cliborne sent her an email informing her

3   that she had exhausted her FMLA/CFRA on August 17, 2012.

4        48.    As a result of receiving the email that Cliborne sent her, Plaintiff sent a response to

5   Cliborne requesting an interactive meeting to discuss reasonable accommodations which Plaintiff

6   would require as a result of having no access to FMLA/CFRA.  Plaintiff also expressed concern in

7   this email but she had previously been informed by an employee of the Health and Safety Division

8   that FMLA/CFRA would not be used on her workers' compensation claim and requested

9   information as to how Claiborne had arrived at the determination that Plaintiff had exhausted her

10  FMLA/CFRA entitlement.  Plaintiff copied Chang on this email, as well as the Manager of the

11  Health and Safety Unit, Peggy Johnson.

12       49.    Cliborne responded to Plaintiff's email requesting information and a reasonable

13  accommodation interactive meeting, by informing her that the determination was made based upon

14  the timesheets Plaintiff had submitted. Cliborne did not respond to Plaintiff's concern that

15  FMLA/CFRA was not to be used for the workers' compensation claim in accordance with

16  information previously provided by the Health and Safety Unit.  Cliborne also did not respond to

17  Plaintiff's request for an interactive meeting.

18       50.    On or about September 7, 2012, Chang responded to Plaintiff's email

19  correspondence to Claiborne. In Chang's email to Plaintiff, he stated that he would investigate the

20  issues related to FMLA/CFRA, and get back to Plaintiff. Chang also did not respond to Plaintiff's

21  request for an interactive meeting.

22       51.    On or about September 15, 2012, Peggy Johnson, during a phone call with Plaintiff,

23  informed Plaintiff that the Health and Safety Unit was aware of her request for an interactive

24  meeting and she had not been forgotten.

25       52.    Neither Chang, Peggy Johnson, nor Cliborne, scheduled a meeting with Plaintiff for

26  the purposes of interacting, related to Plaintiff's reasonable accommodation requests.  Further,

27  despite Plaintiffs request for documentation related to the exhaustion of her FMLA/CFRA leave,

28  accountings were not provided to Plaintiff at any time.

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

53.     On Wednesday, October 10, 2012, Plaintiff was instructed by her physician to request to work from home for two (2) days, Thursday, October 11, and Friday, October 12, while her healthcare providers were attempting to adjust her medications which has been prescribed to treat the various medical conditions Plaintiff had developed during the course of her employment with DCA.

54.     That same day, October 10, 2012, Plaintiff approached Chang regarding her doctor's instructions. Chang responded to Plaintiff "if you are so ill that you need to work from home, just go home and go to bed."

55.     As a result, Plaintiff's physicians determined there was no other option but to place her on medical leave for the duration of the time her medications were being adjusted. Plaintiff's physician placed her on medical leave beginning Thursday, October 11, 2012, through October 31, 2012. As a result of this period of medical leave, Plaintiff exhausted all accrued leave balances.

56.     Plaintiff returned to work on November 1, 2012.  When Plaintiff returned, she discovered several voicemail messages on her telephone line left by counsel, for the State Compensation Insurance Fund (hereinafter "SCIF") related to a matter Plaintiff was providing legal services  Based upon the content of the voicemail messages, counsel for SCIF had not been informed that Plaintiff was out of the office for an extended period of time.

57.     On the afternoon of November 1, 2012, Plaintiff developed a very severe migraine as a result of Johnson yelling at her because Plaintiff expressed concern over DCA's handling of the calls from counsel at SCIF, during her absence.

58.     On the morning of November 2, 2012, Plaintiff awoke, still in severe pain from the migraine which started on November 1, 2012. Having exhausted all of her accrued leave balances, and having not had any response from DCA related to her September 6, 2012 request for an interactive meeting for additional reasonable accommodations, and therefore having no options with regard to her illness, Plaintiff suffered a panic attack. As a result of this panic attack, and owing to the conditions at her place of work, Plaintiff became suicidal for the first time in her life and seriously considered using all available medications in her possession to kill herself. Plaintiff drove herself to the hospital to seek treatment for the migraine and for suicidal ideation.

1       59.    As a result of the events of November 2, 2012, Plaintiff's healthcare providers placed

2  her on additional medical leave from November 5, 2012, through January 1, 2013.

3       60.    When Plaintiff notified Chang of her need for medical leave, and the basis therefore,

4  Chang denied DCA or Legal Affairs' failure to accommodate, and insisted the DCA had granted

5  every accommodation Plaintiff had ever requested. Plaintiff reminded Chang that she had an

6  outstanding request for an interactive meeting related to reasonable accommodations that he was

7  aware of but had failed to facilitate. Thereafter, Chang refused to communicate with Plaintiff.

8       61.    On or about December 10, 2012, Plaintiff received an email from DCA's Health and

9  Safety Unit, purporting to be a reasonable accommodation approval.    This reasonable

10  accommodation approval provided for intermittent medical leave of absence from August 12, 2012,

11  through August 1, 2013, up to 32 hours per month, however, it went on to state that it was provided

12  because of exhaustion of other leave provisions and certification, and further stated, "we will

13  periodically review this accommodation to ensure that it continues to meet your needs, as well as

14  the operational needs of the department." This purported reasonable accommodation was provided

15  without any participation by Plaintiff in any interactive meetings. Furthermore, as a result of the

16  Department's prior failures to engage in the interactive process and provide ample accommodations,

17  Plaintiff had exhausted all accrued leave.  This would result in this accommodation being

18  detrimental to Plaintiff in the form of lost income. No other accommodations were discussed or

19  provided, despite the fact that Plaintiff had requested an interactive meeting, and was aware of other

20  accommodations which could have been provided which would have not been detrimental to

21  Plaintiff.

22       62.    Beginning in early 2006, Plaintiff had participated in the State's Direct Deposit

23  Program. As of December 2012, Plaintiff was involuntarily removed from the Direct Deposit

24  Program. No explanation was provided related to her removal from the Direct Deposit Program

25  despite her request for an explanation.

26       63.    In anticipation of Plaintiff's return to work January 2, 2013, she notified Chang of

27  her restrictions and again requested an interactive meeting.  Chang did not respond to Plaintiff

28  regarding her request for an interactive meeting.

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1    64.    Despite being notified of Plaintiff's ongoing serious medical conditions on or about

2   January 2, 2013, Chang and DCA did not notify her of her FMLA/CFRA rights for calendar year

3   2013.

4    65.    On or about January 4, 2013, Roseanna Leon contacted Plaintiff to request the

5   Plaintiff check her schedule for her availability for three days in mid-January, so that they could

6   schedule an interactive meeting with Johnson.  On the three days requested, Plaintiff's counsel was

7   unavailable.  Plaintiff informed Roseanna Leon of that fact.  Due to Johnson's personal need to

8   leave the office on or about January 16, 2013, so she could attend the Presidential Inauguration in

9   Washington D.C., the Department refused to schedule an interactive meeting until January 29,

10   2013, nearly a full month after Plaintiff again requested an interactive meeting.

11    66.    On January 29, 2013, the first interactive meeting for reasonable accommodations

12   was held some five and half (5.5) months after Plaintiff initially requested an interactive meeting for

13   reasonable accommodations.  In attendance were Johnson, Chang, Marks, who had been promoted

14   to Supervisory Staff Counsel during Plaintiff's medical leave and to whom Plaintiff was now

15   assigned to report, Plaintiff, and her legal counsel.  This meeting took place in the morning at

16   approximately 10 AM. No member of the Health and Safety Unit attended. At this meeting,

17   Plaintiff reaffirmed her prior request from January 2012, for a partial telecommute schedule and

18   presented a three page letter from her physician justifying the need for such a request. Johnson

19   stated that she would get back to Plaintiff's counsel the following week with an answer.  During the

20   interactive meeting, DCA made clear that it had no intentions of providing reasonable

21   accommodations unless Plaintiff was on an unrestricted work schedule.

22    67.    On January 29, 2013, at approximately 5:30 PM, Plaintiff received an email from

23   Marks, informing her that she would not be receiving her paycheck as scheduled on January 30,

24   2013. The email explained that a delay was necessary because Plaintiff's salary was being

25   retroactively reduced as a result of her need for reasonable accommodations.  Plaintiff objected to

26   this and informed Marks in writing by email.  Johnson and Chang were copied on the email by

27   Marks to Plaintiff and Plaintiff copied Johnson and Chang on her email response to Marks. Plaintiff

28   informed Marks that she had been at work every day since January 2, 2013, with the exception of

- 14 -

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1    the Martin Luther King state holiday, and that in accordance with her bargaining unit Memorandum

2    of Understanding (MOU), she was entitled to full pay.

3         68.      On January 30, 2013, Plaintiff received less than a full paycheck.

4         69.      On or about January 30, 2013, Plaintiff was informed by DCA Payroll Technician,

5    Darcia Lumpkin ("Lumpkin"), that Lumpkin had misinterpreted the bargaining unit's agreement,

6    and that she had returned Plaintiff's paycheck back to the State Comptroller's Office. Lumpkin

7    informed Plaintiff that Plaintiff would receive most of her pay on January 30, 2013, and the

8    remainder of her pay in approximately ten (10) days. Plaintiff was not provided a paystub for the

9    January 2013 pay period.  As a result, Plaintiff cannot determine the basis for the pay that was

10    provided or what withholdings were made. Plaintiff's requests for a pay stub or duplicate

11    information have never been answered by the DCA.

12         70.      During the  first week of February, 2013, instead of informing Plaintiff's counsel of

13    what accommodations would be provided to Plaintiff, Johnson contacted Plaintiff's counsel and

14    demanded to know what medications Plaintiff was taking, causing  the problems necessitating a

15    partial telecommute schedule for Plaintiff. Johnson's communication with Plaintiff's counsel

16    ignored the fact that Plaintiffs healthcare providers had explicitly stated that the basis for a partial

17    telecommute schedule was the need to remove Plaintiff from an unhealthy work environment due to

18    DCA's failure to provide reasonable accommodations.

19         71.      On or about February 16, 2013, Plaintiff began working a partial telecommute

20    schedule as a reasonable accommodation. Plaintiff was required to be available for work from 8

21    AM until 5 PM on each day she was telecommuting.  While Defendants finally approved reasonable

22    accommodations for Plaintiff, they failed to provide her with reliable equipment allowing her to

23    perform her job duties.   The laptop assigned to Plaintiff for use during telecommuting was

24    approximately eight (8) years old and running Windows XP. The laptop would regularly drop its

25    connection to the DCA computer network, making it impossible for Plaintiff to access needed

26    computer files and email during her telecommute hours. Plaintiff was forced to place a number of

27    service work orders with the DCA Office of Information Systems, have the laptop reimaged and

28    inspected for repairs, or was simply required to work on her personal computer equipment, or not at

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1   all.   Effective and useful computer equipment was not provided to Plaintiff until Microsoft

2   discontinued support for the Windows XP software platform in approximately May 2014. At that

3   time, Plaintiff was finally provided a modern laptop, capable of maintaining a stable connection

4   with the DCA computer network.

5        72.   On Friday, February 22, 2013 Lumpkin informed Plaintiff of DCA's intention to

6   continue providing less than full pay to Plaintiff.

7        73.   Additionally, on Friday, February 22, 2013, Johnson feigned surprise in learning that

8   Plaintiff's pay had been cut despite having been copied on all correspondence relating to that pay

9   cut. When Plaintiff alleged that the Department was engaging in harassment and discrimination on

10  the basis of Plaintiff's disabilities, Johnson stated "I deny those accusations" and made a physical

11  motion with her hand so as to sweep the comment behind her.   This indicated to Plaintiff that

12  Johnson, a Manager within DCA, intended to ignore Plaintiff's allegations of discrimination and

13  harassment, refusing to investigate these claims by Plaintiff, and to take all reasonable steps to

14  prevent them from reoccurring.

15       74.   At a meeting on February 22, 2013, again attended by Johnson, Chang, Marks,

16  Plaintiff, and Plaintiff's counsel, Johnson again denied knowing anything about Plaintiff's reduced

17  pay. Johnson stated that she would look into the issue and provide a response to Plaintiff's attorney

18  by the following Thursday, February 28, 2013, the next scheduled payday. No reply was ever

19  provided. Johnson further stated that the basis for the docking of pay, which she had already denied

20  knowing about, was that the DCA had conferred with Plaintiff's physician, and Plaintiff's physician

21  had told DCA that Plaintiff was strictly restricted to a four (4) hour workday. Plaintiff is informed

22  and believes that this statement was a fabrication by Johnson, in that Plaintiff's physician denied

23  ever having had such a conversation with DCA officials regarding this issue.

24       75.   On February 28, 2013, Plaintiff received less than a full paycheck. Plaintiff also did

25  not receive a pay stub. Plaintiff is unable to determine how DCA calculated her pay for the month

26  of February 2013, and what withholdings were made.   Plaintiff has asked for, but has never

27  received, an accounting of her pay for February 2013. Plaintiff worked each and every day of the

28

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1  month of February 2013, with the exception of the mandatory furlough day, and the Presidents' Day

2  holiday.

3       76.   On or about March 18, 2013, Plaintiff submitted a formal complaint of

4  discrimination, harassment, retaliation on the basis of Plaintiff's disabilities to DCA's Equal

5  Employment Opportunity Office.  On or about the same day, Plaintiff submitted a complaint of

6  discrimination, harassment, and retaliation on the basis of Plaintiff's disabilities to the California

7  Department of Fair Employment and Housing. Plaintiff has never been informed by the DCA EEO

8  Office as to the results of the investigation conducted related to her complaint.

9       77.   On or about June 2013, Plaintiff informed her supervisor, Marks, that her physicians

10  had informed her that she would need to undergo surgery the last week of August 2013. Instead of

11  providing Plaintiff with an employer's response for FMLA/CFRA requests, Marks provided

12  Plaintiff with a memo in early July 2013, instructing her to fill out paperwork and make a request

13  for FMLA/CFRA, in writing.

14       78.   On or about July 2013, Plaintiff again informed Marks, of her need to take leave

15  beginning August 23, 2013, for scheduled surgery

16       79.   On or about the first week of August, 2013, Plaintiff received a memo from Peggy

17  Johnson, informing her that she was not eligible for FMLA/CFRA, because Plaintiff had allegedly

18  not worked a sufficient number of hours. Plaintiff requested from Peggy Johnson copies of the

19  calculations used to determine how many hours Plaintiff had worked in the 12 months preceding the

20  request for FMLA/CFRA.  When Plaintiff realized that Peggy Johnson had calculated her hours of

21  actual work on the basis of an assumed 8 hour day, Plaintiff informed Peggy Johnson that the

22  calculations were in error because as of February 16, 2013, on at least 3 days per week, Plaintiff

23  was required to work a minimum of 9 hours per day on each of her telecommute days. Furthermore,

24  Plaintiff, on her non-telecommute days, often worked in excess of 8 hours per day, due to the needs

25  of her employment. Plaintiff is an FLSA exempt employee. Plaintiff provided Peggy Johnson with

26  an additional calculation that would exceed the minimum 1250 hours required for eligibility for

27  FLMA/CFRA. Peggy Johnson never responded to Plaintiff's requests for a modification of the

28

1   denial and a recognition of the actual hours worked. As a result, DCA persisted in its denial of

2   FMLA/CFRA leave for Plaintiff's surgery in August 2013.

3        80.    Plaintiff took leave for surgery and to recover from surgery, beginning August 23,

4   2013 and continuing through September 15, 2013.

5        81.    While Plaintiff was on medical leave in August and September 2013, the DCA Legal

6   Affairs Division reassigned to various clients among the attorneys in the office due to recent, new

7   hires. When Plaintiff returned from her medical leave, she was informed that she had been assigned

8   as counsel to the Telephone Medical Advice Services Bureau and the Arbitration Certification

9   Program. These two assignments were considered by the attorneys of the Legal Affairs Division to

10  be the least desirable assignments.

11       82.    In or about June 2013, Plaintiff was diagnosed with a new disability, ulnar nerve

12  neuropathy, which limited the use of her hands and arms to some extent. It took several months for

13  Plaintiff's health care providers to settle upon a specific diagnosis related to Plaintiff's upper

14  extremity condition. However, once they did, they provided a number of recommendations related

15  to her disability. One of the recommendations provided by Plaintiff's health care providers was that

16  Plaintiff use a headset when using the telephone. On or about February 25, 2014, Plaintiff notified

17  her supervisor, Marks, that her physician had made such a recommendation and specifically

18  requested to know what documentation DCA required to facilitate this accommodation. On or

19  about February 25, 2014, Plaintiff's Supervisor acknowledged Plaintiff's request, did not provide

20  any information related to what documentation Plaintiff was required to submit, but did inform

21  Plaintiff's that the Legal Office was in the process of ordering headsets for a number of people in

22  the office, and that the order had not yet been placed. The requested accommodation of a headset

23  for telephone work was not provided until June 23, 2014.

24       83.    Despite having on-going knowledge of Plaintiff's serious medical conditions, which

25  necessitated intermittent leave for medical treatment and flare-ups, Defendants did not provide

26  FMLA/CFRA rights notices at any time in 2014.

27       84.    In October 2014, Plaintiff's assigned client, the Arbitration Certification Program,

28  participated in the annual conference for the International Association of Lemon Law

1   Administrators in San Diego, California. The Defendant, DCA, was a significant participant in this

2   conference including the participation of the Director. Plaintiff was not informed that this

3   conference was taking place, nor was Plaintiff asked to participate. Defendant, DCA, instead

4   elected to send former counsel for ACP, Laura Freedman (Freedman), to the conference when the

5   original planned attorney, Marks, was unable to attend. Plaintiff learned of this conference when

6   she came into the office on one of the days Freedman was out of the office attending the conference

7   and saw Freedman's name noted as being in attendance at the conference. On the date of this

8   conference, Plaintiff had been assigned as legal counsel to ACP for more than one year.

9                                          IV.

10   **FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION BASED UPON**

11   **PHYSICAL AND/OR MENTAL DISABILITY AND FAILURE TO PROVIDE**

12   **REASONABLE ACCOMMODATIONS IN VIOLATION OF FEHA**

13   **[Gov. Code § 12940(a) and (m)]**

14   **(Against all Defendants and DOES 1 thought 25, inclusive)**

15       85.   Plaintiff incorporates by reference paragraphs 1 through 84, as though fully stated

16   herein.

17       86.   Plaintiff is an employee covered by section 12940, et. seq., prohibiting

18   discrimination on the basis of physical disability and/or mental disability and prohibiting an

19   employer's refusal to reasonably accommodate qualified disabled employees.

20       87.   Defendant was, and is at all times material hereto, and employer within the meaning

21   of Gov. Code § 12940, et seq., and as such is prohibited from discriminating against and refusing to

22   accommodate qualified employees.

23       88.   Since approximately 1998, Plaintiff has been disabled by migraine headaches. In

24   approximately September 2007, Plaintiff informed Defendant DCA of this disability by requesting

25   FMLA/CFRA protected leave. In or about August 2008, January 2010, and April 2012, Plaintiff

26   informed DCA of her disability related to anxiety/panic disorder. Defendant DCA was placed on

27   express notice that Plaintiff had a disability within the meaning of the FEHA, Gov. Code §§ 12940

28

1   and 12926. Plaintiff was limited in her work activities, had a record of such limitations, and was

2   recorded by Defendants as having such limitations.

3       89.     Beginning no later than April 2009, and continuing hereafter, Defendants, through

4   their agents, employees, and supervisors, were placed on notice of Plaintiff's disability and her need

5   for reasonable accommodations.

6       90.     Based on the foregoing failures, Defendant DCA, has violated Plaintiff's rights under

7   the FEHA, Gov. Code § 12940, et seq.:

8       a.      By discriminating against Plaintiff in the terms and conditions of her employment

9   due to her disability; and

10      b.      By failing to offer Plaintiff reasonable accommodations; and

11      c.      By failing to implement timely reasonable accommodations approved.

12      91.     As a direct and proximate result of Defendant's conduct, Plaintiff has and will

13  continue to suffer depression, stress, anxiety, sleeplessness and nervousness, that would have been

14  avoided but for Defendant's failure to accommodate.

15      92.     Plaintiff is thereby entitled to and does seek general in compensatory damages in an

16  amount according to proof at trial.

17      93.     As a result of Defendant's unlawful conduct, Plaintiff has been or will be compelled

18  to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to

19  Gov. Code §§ 12940 and 12965(b).

20                                              V.

21  **SECOND CAUSE OF ACTION FOR FAILURE TO ENGAGE TIMELY IN THE GOOD**

22  **FAITH INTERACTIVE PROCESS IN VIOLATION OF FEHA [Gov. Code § 12940(n)]**

23              (Against all Defendants and DOES 1 thought 25, inclusive)

24      94.     Plaintiff refers to the allegations contained in paragraphs 1 through 93 inclusive, and

25  incorporates each by reference as though fully set forth at length herein.

26      95.     Having been placed on notice of Plaintiff's disability and receiving numerous

27  requests for Plaintiff's reasonable accommodations, DCA had an affirmative duty to engage in a

28  timely, good faith, interactive process with Plaintiff, in order to determine effective reasonable

1    accommodations. Defendants failed to comply with this mandatory duty and thereby violated

2    Plaintiff's rights under the FEHA.

3         96.    Moreover, despite Plaintiff's proactive efforts to seek accommodations, by way of

4    bringing her disability to the attention of management, making complaints, filing grievances,

5    requesting information, and the like, Defendant DCA has failed to fulfill its affirmative duty to

6    engage in the mandatory interactive process, in a timely, good faith manner, or at all, in violation of

7    Gov. Code § 12940(n).

8         97.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and/or

9    continues to suffer depression, stress, anxiety, sleeplessness and nervousness, and other physical

10   maladies.

11        98.    Plaintiff is thereby entitled to and does seek general in compensatory damages in an

12   amount according to proof at trial.

13        99.    As a result of Defendant's unlawful conduct, Plaintiff has been or will be compelled

14   to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to

15   Gov. Code §§ 12940 and 12965(b).

16                                         VII.

17   **THIRD CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT IN VIOLATION**

18                           **OF FEHA [Gov. Code § 12940(j)]**

19                  **(Against all Defendants and DOES 1 thought 25, inclusive)**

20        100.    Plaintiff refers to the allegations contained in paragraph 1 through 99 inclusive, and

21   incorporates each by reference as though fully set forth at length herein.

22        101.    Defendant DCA has subjected Plaintiff to unlawful discrimination, by creating a

23   hostile work environment based upon Plaintiff's disability, in violation of FEHA. The acts and

24   conduct which give rise to this harassment were pervasive and severe as described above.

25        102.    The above-described acts of discrimination and harassment created an intimidating,

26   oppressive, hostile, offensive, and abusive work environment, which altered and impaired the

27   Plaintiff's employment.

28

                                        - 21 -

103.   The foregoing conduct was severe or pervasive, with the objective or the consequence, of making it more difficult and less desirable to Plaintiff to perform her work duties. These actions have been and continue to be taken by Defendants, with the objective or the consequence, or adversely transforming Plaintiff's work environment.

104.   Plaintiff is informed and believes, and based therefore thereon alleges, that in addition to the practices enumerated above, Defendants, and each of them, have engaged in other acts, conduct, and practices against the Plaintiff which are not yet fully known. At such time, as said practices become known to Plaintiff, Plaintiff will seek leave of the court to amend this complaint.

105.   Defendant DCA, through its agents, managers, and employees, was on actual and constructive notice of the conduct described herein.

106.   Defendant DCA, and its agents, managers, employees, violated Gov. Code § 12940, by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act as described herein.

107.   Upon receiving Plaintiff's report of discrimination, Defendant DCA failed to fulfill its statutory duty to timely take all reasonable and necessary steps to prevent discrimination, harassment, and retaliation from occurring in the workplace, as required the Gov. Code § 12940(k).

108.   As a direct and proximate result of the acts of Defendants, and all of them, Plaintiff has and will continue to suffer depression, stress, anxiety, sleeplessness, nervousness, general discomfort, and other physical maladies; and will incur medical expenses for the treatment of said conditions by healthcare professionals and other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in an amount according to proof at trial.

109.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been or will be compelled to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to Gov. Code §§ 12940 and 12965(b).

## VIII.

### FOURTH CAUSE OF ACTION FOR RETALIATION IN VIOLATION OF FEHA

[Gov. Code § 12940(g)]

(Against State of California, DCA, and DOES 1 through 25, inclusive)

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

110.   Plaintiff refers to the allegations contained in paragraphs 1 through 109 inclusive, and incorporates each by reference as though fully set forth at length herein.

111.   Plaintiff engaged in conduct protected by the FEHA. In or about May 2008, January 2010, and March 2013, Defendants were formed of Plaintiff's good-faith belief that she was being discriminated against because of her disability. Defendants were thereby placed on express notice the Plaintiff had a physical disability within the meaning of the FEHA, Gov. Code §§ 12940 and 12926.

112.   Thereafter, rather than providing Plaintiff with reasonable accommodations, Defendants retaliated against the Plaintiff.

113.   The above-mentioned conduct constitutes acts of retaliation performed by Defendants in response to Plaintiff's conduct in 1) asserting the existence of her disability, 2) requesting reasonable accommodations, and 3) making internal complaints and grievances regarding Defendants, and specifically Chang and Scuri's disregard for Plaintiffs request for reasonable accommodations.

114.   Plaintiff is informed and believes, and based therefore thereon alleges, that in addition to the practices enumerated above, Defendants, and each of them, have engaged in other acts, conduct, and practices against the Plaintiff which are not yet fully known. At such time, as said practices become known to Plaintiff, Plaintiff will seek leave of the court to amend this complaint.

115.   As a direct and proximate result of the acts of Defendants, and all of them, Plaintiff has and will continue to suffer depression, stress, anxiety, sleeplessness, nervousness, general discomfort, and other physical maladies; and will incur medical expenses for the treatment of said conditions by healthcare professionals and other incidental expenses. Plaintiff is thereby entitled to general and compensatory damages in an amount according to proof at trial.

116.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been or will be compelled to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to Gov. Code §§ 12940 and 12965(b).

/ / /

/ / /

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

IX.

FIFTH CAUSE OF ACTION FOR FAILURE TO PREVENT DISCRIMINATION AND

HARASSMENT IN VIOLATION OF FEHA [Gov. Code § 12940(j) and (k)]

(Against all Defendants and DOES 1 thought 25, inclusive)

117.   Plaintiff refers to the allegations contained in paragraphs 1 through 116 inclusive, and incorporates each by reference as though fully set forth at length herein.

118.   At all times herein mentioned, the FEHA, Gov. Code § 12940(a), et seq., was in full force and effect and binding on Defendants. The FEHA require Defendants, among other things, to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

119.   In perpetrating the above-described acts and failures to act, Defendants and their agents violated these provisions by failing to take all reasonable steps necessary to prevent such discrimination based on disability from occurring. In violation of Gov. Code § 12940(j) and (k), these acts and failures to act include, but are not limited to, the following:

   a)   Defendants have no policies and/or have ineffective policies, practices, and procedures regarding Defendants' obligations to refrain from discrimination on the basis of physical and/or mental disability;

   b)   Defendants have no policies and/or have ineffective policies, practices, and procedures regarding the handling of complaints of such discrimination;

   c)   Defendants failed to adopt and/or enforce reasonable and effective practices, policies, and procedures regarding the handling of complaints of discrimination;

   d)   Defendants failed to take any and/or took inappropriate or ineffective action to investigate complaints by Plaintiff and/or others of discrimination; and

   e)   Defendants failed to implement whatever policies, practices, and/or procedures regarding the foregoing which were in existence in an effective manner, or at all.

120.   During the entire relevant period, Defendants failed to take all reasonable steps to prevent discrimination and harassment, and such discrimination and harassment, was condoned, encouraged, tolerated, sanction, and ratified.

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

121.   . During the entire relevant period, Defendant failed to provide any and/or adequate training, education, and/or information to their personnel, and most particularly to management and supervisory personnel with regard to policies and procedures regarding discrimination on the basis of physical and/or mental disability.

122.   During the entire relevant period, Defendants failed to take reasonable steps to prevent discrimination and harassment from being inflicted upon Plaintiff, resulting in the worsening of Plaintiff's medical conditions.

123.   As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer physical and mental injuries, pain and suffering, extreme and severe mental anguish, and emotional distress. Plaintiff has incurred and will incur medical expenses for treatment by physicians, psychiatrists, and other healthcare providers, and for other incidental medical expenses. Plaintiff has suffered and will continue to suffer loss of earnings, and other employment benefits and job opportunities. Plaintiff it is therefore entitled to general compensatory damages in amount to be proven at trial.

124.   The conduct of Defendants, and each of them, and their agents, and employees as described herein, was malicious, fraudulent, and oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions.

125.   Defendants and each of them, and their agents, employees, directors, managers, or supervisors, authorize, condoned, and ratified the unlawful conduct of each other. Plaintiff is thereby entitled to punitive and exemplary damages against Defendants Chang and Scuri.

126.   The acts taken toward Plaintiff were carried out by and/or ratified by Defendant and/or managing agent employees of Defendant acting in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner in order to injure and damage Plaintiff, thereby justifying an award to her of punitive damages in the sum appropriate to punish and make an example of Defendants Chang and Scuri.

127.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been or will be compelled to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to Gov. Code §§ 12940 and 12965(b).

X.

## SIXTH CAUSE OF ACTION FOR UNLAWFUL DENIAL OR INTERFERENCE WITH EXERCISING RIGHTS UNDER CFRA [Gov. Code § 12945.2]

### (Against all Defendants and DOES 1 thought 25, inclusive)

128.   Plaintiff refers to the allegations contained in paragraphs 1 through 127 inclusive, and incorporates each by reference as though fully set forth at length herein.

129.   Plaintiff was eligible for leave under the California Family Rights Act (CFRA).

130.   At all times herein mentioned, FEHA, Gov. Code §§ 12 900 – 12966, was in full force and effect and was binding on Defendants. This included Gov. Code § 12945.2(t) et seq., which is commonly referred to as the California Family Rights Act ("CFRA"). This statute requires Defendants to refrain from discriminating or retaliating against any employee on the basis of that employee's need to take leave to attend to her own serious medical condition or having had taken such leave. (Gov. Code § 12945.2(a) and (l).)

131.   Defendants,  and each of them, are subject to the requirements of the CFRA, and each had a legal duty not to interfere with Plaintiff's rights under the Act.

132.   Plaintiff provided verbal and written notice, as set forth above, to make Defendants aware that Plaintiff needed CFRA qualifying leave and the reasons for said leave, and the anticipated timing and duration of the leave. Plaintiff was not under any legal duty to expressly assert her rights under CFRA and/or FMLA or even mention CFRA or FMLA, although as to the latter, Plaintiff did so as set forth above, in order to meet the required notice to her employer.

133.   Plaintiff is informed and believes, and on that basis alleges, that the acts of said Defendants in failing to permit Plaintiff to exercise her lawful rights to take a statutory family care and medical leave.  Defendants, and each of them, engaged in an unlawful employment practice in violation of the CFRA, Gov. Code. §12945.2 and the California Code of Regulations §7297.9.

134.   As a further proximate result of the wrongful conduct by Defendants, and each of them, and the resulting damages to Plaintiff, Plaintiff sustained emotional distress, all to her damage in an amount to be proven at the time of trial.

135.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been or will be compelled to retain legal counsel, and is entitled to reasonable attorney's fees and costs of suit, pursuant to Gov. Code § 12945.2.

XI.

**SEVENTH CAUSE OF ACTION FOR UNLAWFUL DENIAL OR INTERFERENCE WITH EXERCISING RIGHTS UNDER FMLA [12 U.S.C.A. §2617(a)]**

**(Against all Defendants and DOES 1 thought 25, inclusive)**

136.    Plaintiff refers to the allegations contained in paragraphs 1 through 135 inclusive, and incorporates each by reference as though fully set forth at length herein.

137.    Plaintiff was eligible for leave under the Family Medical Leave Act ("FMLA").

138.    Defendants State of California and DCA are employers subject to the requirements of the FMLA, and had a legal duty not to interfere with Plaintiff's rights under that Act.

139.    Defendants Chang and Scuri are Supervisors and/or managers of Defendant DCA who directly or indirectly acted in the interests of their employer State of California and DCA.

140.    Defendants Chang and Scuri had a legal duty not to interfere with Plaintiff's rights under the act.

141.    Defendants, and each of them, violated the FMLA by discouraging Plaintiff from taking FMLA leave when she requested FMLA leave.

142.    Defendants, and each of them, violated the FMLA by failing to provide Plaintiff with proper notice regarding her eligibility for FMLA leave.

143.    Defendants, and each of them, violated the FMLA by harassing Plaintiff for utilizing FMLA leave.

144.    Defendants' Chang and Scuri's violation of Plaintiff's FMLA rights was wanton, willful, intentional, malicious, oppressive, fraudulent, and portrayed a reckless disregard for Plaintiff's rights, thus entitling Plaintiff to an award of punitive damages.

145.    As a proximate and direct result of Defendants' violation of the FMLA, Plaintiff suffered loss, injury, and damaged in an amount to be determined according to proof at trial.

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1    146.   As a further proximate result of the wrongful conduct by Defendants, Plaintiff

2  sustained emotional distress, all to her damage in an amount to be proven at the time of trial.

3    147.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been

4  or will be compelled to retain legal counsel, and is entitled to reasonable attorney's fees and costs of

5  suit, pursuant to 26 U.S.C. § 2617(a).

6                                             **XII.**

7  **EIGHTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL**

8                                         **DISTRESS**

9        **(Against Defendants Chang, Scuri and DOES 1 through 25, inclusive)**

10    148.   Plaintiff incorporates by reference paragraphs 1 through 147, as though fully stated

11  herein.

12    149.   Defendants' conduct alleged herein was intentional, outrageous, malicious, and

13  committed for the purposes of causing Plaintiff to suffer humiliation, mental anguish, and severe

14  physical and emotional distress, and Plaintiff did suffer such distress.

15    150.   As a direct and proximate result of Defendants' conduct as hereinabove alleged,

16  Plaintiff was injured in her strength, health, and activity, sustaining shock and injury to her nervous

17  system, all of which have caused and continue to cause Plaintiff great mental pain, embarrassment,

18  humiliation, distress, anguish, and suffering, all to her damage in an amount in excess of the

19  minimum subject matter jurisdiction of this court and according to proof.

20    151.   As a direct and proximate cause of the conduct alleged herein, Plaintiff has suffered

21  and continues to suffer losses in earnings, deferred compensation, employment benefits, and earning

22  capacity, opportunities for employment advancement, embarrassment, humiliation, mental anguish,

23  and distress, all to her damage in excess of the minimum subject matter jurisdiction of this court and

24  according to proof.

25  ///

26  ///

27  ///

28  ///

-28-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1) For compensatory damages including damages for lost wages, lost employee benefits, vacation benefits, medical expenses, pain, suffering and emotional distress, and other special and general damages according to proof at trial;

2) For prejudgment interest at the maximum legal rate;

3) For post judgment interest at the maximum legal rate;

4) For punitive damages in an amount appropriate to punish Defendants Chang and Scuri and deter others from engaging in similar conduct for all causes of action in which such damages are recoverable, pursuant to FEHA, Civil Code Section 3294, and all other applicable statutes;

5) For payment of Plaintiff's reasonable attorneys' fees and expert witness fees pursuant to Gov. Code § 12965(b), and all other applicable statutes;

6) For costs of suit herein incurred;

7) That all issues herein be determined by a jury; and

8) For such other and further relief as the court may deem just and proper.

Dated: March 19, 2015

Shela Barker
SHELA BARKER
In Pro Per

**VERIFICATION**

The undersigned declares for herself:

I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. With respect to those causes of action alleged by me, the same is true by my own knowledge, except those matters which are herein stated on information and belief, and, as to those matters, I believe them to be true.

1    I declare under penalty of perjury under the laws of the State of California, that the

2  foregoing is true and correct.

3

Dated: March 19, 2015

4
                                                    SHELA BARKER

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

Exhibit 1

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 l Elk Grove l CA l 95758
800-884-1684  l Videophone 916-226-5285 l TDD 800-700-2320
www.dfeh.ca.gov l email: contact.center@dfeh.ca.gov

DIRECTOR PHYLLIS W. CHEN

March 20, 2014

Shela Barker
3905 Yellowstone Ln
El Dorado Hills, CA 95762

RE: **Notice of Case Closure and Right to Sue**
    DFEH Number: 99023-44382
    EEOC Number: 37A-2013-18449-C (Sacramento - N)
    Barker / California Department of Consumer Affairs

Dear Shela Barker:

The Department of Fair Employment and Housing (DFEH) has closed your case for the following reason: Investigated and Dismissed – Insufficient Evidence. Based upon its investigation, DFEH is unable to conclude that the information obtained establishes a violation of the statute. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this complaint.

**This is your Right to Sue notice.** According to Government Code section 12966, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. This is also applicable to DFEH complaints that are filed under, and allege a violation of, Government Code section 12948, which incorporates Civil Code sections 51, 51.7, and 54. The civil action must be filed within one year from the date of this letter. However, if your civil complaint alleges a violation of Civil Code section 51, 51.7, or 54, you should consult an attorney about the applicable statutes of limitation.

Your complaint **is dual filed** with the United States Equal Employment Opportunity Commission (EEOC). You have a right to request EEOC to perform a substantial weight review of our findings. This request must be made within fifteen (15) days of your receipt of this notice. Pursuant to Government code section 12965, subdivision (d) (1), your right to sue may be tolled during the pendency of EEOC's review of your complaint. To secure this review, you must request it in writing to the State and Local Coordinator nearest you:

| EEOC Northern California | EEOC Southern California |
|---|---|
| 450 Golden Gate Avenue, 5th Floor West | Roybal Federal Building |
| P.O. Box 36025 | 255 East Temple Ste., 4th Floor |
| San Francisco, CA 94102-3661 | Los Angeles, CA  90012 |
| (415) 522-3000 | (213) 894-1100 |

You may file an appeal with DFEH which is a written request made to the District Administrator for reconsideration of the decision to close your case. Your appeal should include a 1) summary as to why you disagree with the reason; and/or, 2) any new detailed information (e.g.,

Notice of Case Closure and Right to Sue
March 20, 2014
Page **2** of **2**

documents, records, witness information) that supports your claim. If you appeal, the information you provide will be carefully considered.

Although DFEH has concluded that the evidence and information did not support a finding that a violation occurred, the allegations and conduct at issue may be in violation of other laws. You should consult an attorney as soon as possible regarding any other options and/or recourse you may have regarding the underlying acts or conduct.

Should you decide to bring a civil action on your own behalf in court in the State of California under the provisions of the California Fair Employment and Housing Act (FEHA) against the person, employer, labor organization or employment agency named in your complaint, below are resources for this. Please note that if a settlement agreement has been signed resolving the complaint, you might have waived the right to file a private lawsuit.

**Finding an Attorney**
To proceed in Superior Court, you should contact an attorney. If you do not already have an attorney, the organizations listed below may be able to assist you:

- The State Bar of California has a Lawyer Referral Services Program which can be accessed through its Web site at www.calbar.ca.gov or by calling (866) 442-2529 (within California) or (415) 538-2250 (outside California).

- Your county may have a lawyer referral service. Check the Yellow Pages of your telephone book under "Attorneys."

**Filing in Small Claims Court**
- The Department of Consumer Affairs (DCA) has a publication titled "The Small Claims Court: A Guide to Its Practical Use" online at of "The Small Claims Court: A Guide to Its Practical Use" online at http://www.dca.ca.gov/publications/small_claims. You may also order a free copy of "The Small Claims Court: A Guide to Its Practical Use" online, by calling the DCA Publication Hotline at (866) 320-8652, or by writing to them at: DCA, Office of Publications, Design and Editing; 1625 North Market Blvd., Suite N-112; Sacramento; CA; 95834.

- The State Bar of California has information on "Using the Small Claims Court" under the "Public Services" section of its Web site located at www.calbar.ca.gov.

Sincerely,

Teri Houston
Consultant II
[213] 337-4466

cc:   California Department of Consumer Affairs
      1625 N Market Blvd, S-309
      Sacramento CA 95834

FOR COURT USE ONLY

Shela Barker
PO Box 15054
Sacramento, CA 95851
TELEPHONE NO.: 916-538-2009  FAX NO.:
ATTORNEY FOR (Name): In Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gorden D. Schraber Sacramento County Courthouse

CASE NAME:
Shela Barker v. State of California, Dept. of Consumer Affairs, et al.

**FILED**
**Superior Court Of California,**
**Sacramento**
**03/19/2015**
emedina
By _____, Deputy
Case Number:
**34-2015-00176766**

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary b.[ ] nonmonetary; declaratory or injunctive relief c.[✓] punitive
4. Number of causes of action (specify): Eight
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 19, 2015
Shela Barker
_____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one box for the case type that best describes the case.** If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]                **CIVIL CASE COVER SHEET**

| | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO<br>STREET ADDRESS: 720 Ninth STREET<br><br>MAILING ADDRESS: 720 Ninth STREET<br><br>CITY AND ZIPCODE: Sacramento, CA 95814-1311<br><br>BRANCH NAME:    Gordon D Schaber Courthouse<br><br>PHONE NUMBER:    (916) 874-5522 | |

| SHORT TITLE:    Barker vs. State of California | |
|---|---|

| NOTICE OF CASE MANAGEMENT CONFERENCE<br>AND ORDER TO APPEAR | CASE NUMBER:<br>34-2015-00176766-CU-OE-GDS |
|---|---|

**Hearing Date**

The above entitled action has been set for a case management conference at 08:30 AM on 03/10/2016 in Department 36 in accordance with California Rules of Court 212. You must be familiar with the case and fully prepared to participate effectively in the case management conference.

**Case Management Statement**

All parties must file and serve a case management statement at least 15 calendar days before the case management conference. Parties are encouraged to file a single joint case management statement.

**Minimum Requirements**
Prior to the filing of the case management statement, the parties should have done the following:
    -Served all parties named in the complaint within 60 days after the summons has been issued
    -Ensured that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered
    -Met and conferred with all parties as required by CRC 212 (f) to discuss and resolve issues set forth therein.

**Tentative Ruling**
Following its review of the case management statement(s), the court may determine that a case management conference is not necessary.
To determine whether an appearance is required, the parties must check the court's tentative rulings after 2:00 p.m. on the Court day before the Thursday calendar by accessing the court's internet website at www.saccourt.ca.gov

**Case Management Orders**
At the case management conference, the court will consider whether the case should be ordered to judicial arbitration or referred to other forms of Alternative Dispute Resolution. Whether or not a case management conference is held, the court will issue a case management order shortly after the scheduled conference date.

**Service of Case Management Notice**
Unless otherwise ordered by the court, plaintiff shall serve a copy of this notice on any party to the complaint appearing after the court issued this notice. The cross-complainant shall have the same obligation with respect to the cross-complaint.

**Certification Filed in Lieu of Case Management Statement**
If parties in the action file a certification on a form provided by the court at least 15 calendar days prior to the date of the case management conference that the case is short cause (five hours or less of trial time), that the pleading stage is complete and that the case will be ready for trial within 60 days, the case will be exempted from any further case management requirements and will be set for trial within 60-120 days. The certification shall be filed in lieu of a case management statement.

---

NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER TO APPEAR                    Page: 1

**Compliance**
Failure to comply with this notice or to appear at the case management conference may result in the imposition of sanctions (including dismissal of the case, striking of the answer, or payment of money).

**Continuances**
Case management conference will not be continued except on a showing of good cause. If your case management conference is continued on motion or by the court on its own motion all parties shall file and serve a new case management statement at least 15 calendar days before the continued case management conference.

Dated: 03/20/2015

Gerrit W. Wood , Judge of the Superior Court



# SUPERIOR COURT OF CALIFORNIA
## County of Sacramento
### 720 Ninth Street
### Sacramento, CA  95814-1380
### (916) 874-5522—Website www.saccourt.ca.gov

## Program Case Notice
### Unlimited Civil Case

The Case Management Program (CMP) requires the following timelines to be met in all cases except those that are excluded by California Rule of Court 3.712(b) and (c):

| Action | Requirement |
|---|---|
| Service of Summons | Summons, complaint and program case notice must be served on all named defendants and proofs of service on those defendants must be filed with the court within **60 days** from the filing of the complaint. |
| | When the complaint is amended to add a new defendant, the added defendant must be served and proofs of service must be filed within **30 days** after the filing of the amended complaint. |
| | A cross-complaint adding a new party must be served and proofs of service must be filed with the court **30 days** from the filing of the cross-complaint. |
| Statement of Damages | If a statement of damages pursuant to Section 425.11 of the Code of Civil Procedure or a statement of punitive damages is required, it must be served with the summons and complaint. |
| Certificate of Service/Ex Parte Application | Within **75 days** of the filing of the complaint, plaintiff must file a certificate of service or an Ex Parte Application for Extension of Time to Serve Pleading on a form provided by the Judicial Council. |
| Responsive Pleadings | If a responsive pleading is not served within the time limits and no extension of time has been granted, the plaintiff within **10 days** after the time for service has elapsed must file a request for entry of default. |
| | Parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint. |
| | No extensions of time to respond beyond **105 days** from the filing of the complaint may be given. |
| Judgment by Default | When default is entered, the party who requested the entry of default must apply for a default judgment against the defaulting party within **45 days** after entry of default, unless the court has granted an extension of time. |
| Case Management Statement | The court will provide a notice of case management conference when the complaint is filed.  A case management statement shall be filed at least **15 calendar days** prior to the date set for the case management conference. |
| Mediation Statement | The Mediation Statement shall be filed concurrently with the Case Management Statement as required under Local Rule 2.78 unless the parties have filed a Stipulation for Alternative Dispute Resolution form with the ADR Administrator at any time up to 15 calendar days prior to the Case Management Conference. |
| Meet and Confer | Parties must meet and confer, in person or by telephone as required in California Rules of Court 3.724 at least **30 calendar days** before the case management conference date. |
| Case Management Conference | A case management conference is generally held within **180 days** of the filing of the complaint. |

Failure to comply with the program rules may result in the imposition of sanctions or an order to show cause.  Please refer to Local Rules Chapter Two – Part 4 for more information.

### NOTE: THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT.



**SUPERIOR COURT OF CALIFORNIA**
COUNTY OF SACRAMENTO
SACRAMENTO, CALIFORNIA, 95814
916-874-5522
WWW.SACCOURT.CA.GOV

## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION PACKAGE

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Superior Court of California, County of Sacramento (Sacramento County Superior Court), strongly encourages parties in civil cases to explore and pursue the use of Alternative Dispute Resolution.

**What is Alternative Dispute Resolution?**

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include:

- Arbitration
- Mediation
- Settlement Conferences
- Private judging
- Neutral evaluation
- Mini-trials
- Negotiation and *hybrids* of these processes

All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Sacramento County Superior Court offers Mediation and Arbitration.

**What are the advantages of using ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)

- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration and Mediation**

Although there are many different types of ADR processes, the types most commonly used to resolve disputes in California state courts are Arbitration and Mediation. The Sacramento County Superior Court currently offers pre-screened panelists with experience and training in each of the following areas.

**Arbitration.** An Arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an Arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitration can be binding if the parties so agree in writing. If there is no such agreement, either party can reject the Arbitration award and request a trial.



**Mediation.** Mediation is a voluntary, informal, confidential process in which the Mediator, a neutral third party, facilitates settlement negotiations. The Mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

Litigants are encouraged to use an ADR process as early in the case as circumstances permit. All appropriate cases will be reviewed for referral to ADR at the Case Management Conference(CMC).

## ADR Procedures for the Sacramento County Superior Court

Upon filing a complaint or cross-complaint, the plaintiff/cross-complainant must acquire this information package from the Court's Website, http://www.saccourt.ca.gov, or the Superior Court Clerk. Plaintiff is required to include the ADR Information Package when he or she serves the Complaint on the Defendant.

The court's ADR Panel List is available on-line at http://www.saccourt.ca.gov or may be obtained at the Civil Filing Counter at the Gordon D. Schaber Sacramento County Courthouse, 720 Ninth Street, Room 101, Sacramento, CA 95814.

**Mediation.**
All parties to the dispute may voluntarily agree to submit the case to a neutral Mediator, either through a court-appointment or through a private arrangement. The parties may choose either of the following Mediation choices:

>    **Private Mediation.** Parties to a civil action agree to mediate their dispute with a Mediator of their choice without court assistance. The cost of Mediation must be borne by the parties equally unless the parties agree otherwise. Parties will be charged an amount as set by the Mediator (refer to the ADR Panel List for current rates).

>    **Court Mediation.** Upon stipulation of the parties, a Mediator and alternate Mediator will be selected from the court-approved list of neutrals (ADR Panel List). The court will confirm the selected Mediator and notice parties by mail.

>    The Mediator is then responsible for contacting the parties to confirm a date, time, and place for Mediation. Mediators on the court's approved ADR Panel List have agreed to provide up to three (3) hours of pro-bono Mediation. In the event the Mediation extends beyond 3 hours and parties determine it would be beneficial to continue the Mediation process; the parties will independently be responsible for compensating the Mediator in an amount as set by the Mediator.

<u>UNLIMITED CIVIL CASES</u>
- A *Stipulation and Order to Mediation – Unlimited Civil Cases,* Form CV\E-MED-179 *(see attached)* may be filed with the court at any time up to 15 calendar days prior to the Case Management Conference.

- If the parties do not stipulate to Mediation prior to their CMC, they may indicate their willingness to stipulate to Mediation at the CMC. In that event, parties must submit a *Stipulation and Order to Mediation – Unlimited Civil Cases* within 14 calendar days after their CMC.

- A *Mediation Statement* must be filed with the *Case Management Statement.*

<u>LIMITED CIVIL CASES</u>
- Parties may select and conduct voluntary Private Mediation without notification to the Court.

- Parties may stipulate to court mediation by filing a Stipulation and Order to Arbitration/Mediation - Limited Civil Cases form (CV\E-203) at any time after the filing of the Limited Civil Case Status Memorandum form (CV\E-202). This form is located on the court's website at http://www.saccourt.ca.gov. A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum.



Superior Court of California, County of Sacramento

Case Management

## Arbitration
### UNLIMITED CIVIL CASES
- Plaintiff may elect, the parties may stipulate, or the judge may Order the case to Arbitration. Parties will be asked to select an Arbitrator and three alternate Arbitrators from the court's ADR Panel List. The court will send a Notice of Appointment and an appropriate Order to Arbitration to all parties.

- Arbitrations are conducted pursuant to California Rules of Court, rules 3.810 through 3.830, and Local Rules Chapter 2, Part 5. Unless otherwise stipulated, an Award of Arbitrator is not binding upon the parties provided that they file a timely Request for Trial De Novo pursuant to California Rules of Court, rule 3.826. Upon the filing of a timely Request for Trial De Novo, the case will proceed to a Trial-Setting Conference. If no timely Request for Trial De Novo is filed, judgment based upon the Award of Arbitrator will be entered pursuant to California Rules of Court, rule 3.827.

## LIMITED CIVIL CASES
Arbitration may occur in a limited civil case under the following circumstances:
- When all parties stipulate to arbitration pursuant to Code of Civil Procedure section 1141.12. A stipulation for arbitration shall be filed using the Court's local form, Stipulation and Order to Arbitration/Mediation – Limited Civil Cases form (CV\E-203). A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum form (CV\E-202).

- When plaintiff elects to refer the case to judicial arbitration. A written election by the plaintiff to submit an action or proceeding to arbitration shall be filed using the Court's local form, Limited Civil Case Status Memorandum form (CV\E-202).

## Additional Information
For additional information regarding the Court's ADR program, please go to the Court's website http://www.saccourt.ca.gov.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (NAME, STATE BAR # AND ADDRESS): | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.          FAX NO. (Optional)<br>EMAIL ADDRESS (Optional)<br>ATTORNEY FOR (NAME):<br>**Superior Court of California, County of Sacramento**<br>720 Ninth Street, Room 101<br>Sacramento, CA 95814-1380<br>(916) 874-5522—Website www.saccourt.ca.gov | |

| PLAINTIFF/PETITIONER: | CASE MANAGEMENT CONFERENCE DATE: |
|---|---|
| DEFENDANT/RESPONDENT: | CASE NUMBER: |
| **STIPULATION AND ORDER TO MEDIATION – UNLIMITED CIVIL** | ASSIGNED DEPT.: |

The parties and their attorneys stipulate that the claims in this action shall be submitted to the following mediation process:

### Type of Mediation (select one):

☐ **1. Court Mediation.** *Mediators on the court's approved ADR Panel List have agreed to provide up to three (3) hours of pro-bono Mediation. In the event the Mediation extends beyond 3 hours and parties determine it would be beneficial to continue the Mediation process: the parties will independently be responsible for compensating the Mediator in an amount as set by the Mediator.*

☐ **2. Court Mediation in lieu of previously ordered Arbitration.** *Mediator's on the court's approved ADR Panel List have agreed to provide up to three (3) hours of pro-bono Mediation. In the event the Mediation extends beyond 3 hours and parties determine it would be beneficial to continue the Mediation process: the parties will independently be responsible for compensating the Mediator in an amount as set by the Mediator.*

☐ **3. Private Mediation.** *Per Local Rule 2.84 the cost of mediation must be borne by the parties equally unless the parties agree otherwise. Parties will be charged an amount as set by the Mediator.*

☐ **4. Private Mediation in lieu of previously ordered Arbitration.** *Per Local Rule 2.84 the cost of mediation must be borne by the parties equally unless the parties agree otherwise. Parties will be charged an amount as set by the Mediator.*

### Neutral

Court Neutral Selected:          Name_____
(If type of Mediation selected above is option 1 or 2)

Alternate Court Neutral Selected:          Name_____
(If type of Mediation selected above is option 1 or 2)

Alternate Court Neutral Selected:          Name_____
(If type of Mediation selected above is option 1 or 2)

Private Neutral Selected:          Name_____
(If type of Mediation selected above is option 3 or 4)

### Other Stipulations

☐ Discovery to remain open 30 days prior to trial.

Additional Stipulations: _____

---

Stipulation and Order to Mediation – Unlimited Civil                    Page 1 of 3

CV\E–MED–179 (Rev 01.01.14)
Local Form Adopted for Mandatory Use

## STIPULATION AND ORDER TO MEDIATION – UNLIMITED CIVIL

PLAINTIFF/PETITIONER: _____   CASE NUMBER: _____

DEFENDANT/RESPONDENT: _____

| _____ | _____ | _____ |
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

Bar # _____
Address _____
_____

☐ Plaintiff   ☐ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant   Dated: _____

| _____ | _____ | _____ |
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

Bar # _____
Address _____
_____

☐ Plaintiff   ☐ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant   Dated: _____

| _____ | _____ | _____ |
| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |

Bar # _____
Address _____
_____

☐ Plaintiff   ☐ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant   Dated: _____

☐ Additional Signature Page(s) Attached

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore:

☐ Stipulation and Order to Mediation deferred to Case Management Conference.

☐ The Court orders the parties to enter mediation as stipulated above, pursuant to Chapter Two – Part 5 of the Local Rules.

☐ Previously scheduled Case Management Conference is vacated.

☐ Previous order to Arbitration is vacated and appointment of Arbitrator rescinded.

☐ The case is ordered to the Trial-Setting Process. The Trial and Settlement Conference dates shall be selected no later than
_____

☐ Trial-Setting Conference is vacated.

☐ Time to Select Trial date and Mandatory Settlement Conference date is extended to _____.

☐ Mediation Status Conference set for: _____   _____   _____
                                         Date                Time              Department

☐ Stipulation and Order to Mediation denied.

☐ It is further ordered that: _____
_____

Dated: _____        Signed: _____
                                                **Judge of the Superior Court**

## STIPULATION AND ORDER TO MEDIATION

*(Additional Signature Page)*

PLAINTIFF/PETITIONER: _____ CASE NUMBER: _____

DEFENDANT/RESPONDENT: _____

_____   _____   _____
Name of Party Stipulating    Name of Party or Attorney Executing Stipulation    Signature of Party or Attorney
Bar # _____
Address_____
_____

☐ Plaintiff  ☐ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant  Dated: _____

_____   _____   _____
Name of Party Stipulating    Name of Party or Attorney Executing Stipulation    Signature of Party or Attorney
Bar # _____
Address_____
_____

☐ Plaintiff  ☐ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant  Dated: _____

_____   _____   _____
Name of Party Stipulating    Name of Party or Attorney Executing Stipulation    Signature of Party or Attorney
Bar # _____
Address_____
_____

☐ Plaintiff  ☐ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant  Dated: _____

_____   _____   _____
Name of Party Stipulating    Name of Party or Attorney Executing Stipulation    Signature of Party or Attorney
Bar # _____
Address_____
_____

☐ Plaintiff  ☐ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant  Dated: _____

_____   _____   _____
Name of Party Stipulating    Name of Party or Attorney Executing Stipulation    Signature of Party or Attorney
Bar # _____
Address_____
_____

☐ Plaintiff  ☐ Defendant  ☐ Cross-Complainant  ☐ Cross-Defendant  Dated: _____

# Exhibit B

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

State of California; Department of Consumer Affairs, a public entity;
Donald Chang, and individual, Anita Scuri, an individual; Does 1-25

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Shela Barker, an individual

FILED
Superior Court Of California,
Sacramento

03/19/2015

emedina

By_____, Deputy

Case Number:
**34-2015-00176766**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* 720 9th Street<br><br>Sacramento, CA 95814 | CASE NUMBER:<br>*(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Shela Barker, In Pro Per, 916-538-2009

| DATE: | MAR 1 9 2015 | Clerk, by | E. MEDINA | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☑ on behalf of *(specify)*: State of California

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☑ other *(specify)*: Public Entity

4. ☑ by personal delivery on *(date)*: 5-22-15

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov



Exhibit B

# Exhibit C

# DEPARTMENT OF JUSTICE
## Civil Service of Process Cover Sheet
Please circle one:  SAC  SF  OAK  SD  FRESNO

Date Received

| Case Name: | State of California ; et ~ 1 |
| | v |
| | Sheila Barker , an individual |

| County : | Sacramento | | Court No.: | 34-2015 - 00176766 |

| Document(s) served: | ☑ Summons and Complaint/Cross Complaint, | ☐ Writ of Mandate and Complaint for Declaratory Relief |
| | ☑ Case Management Conference Memo | ☐ Other (please list): |
| | ☐ Case Management Statement | |
| | ☐ Notice of Deposition | |
| | ☒ Civil Case Cover Sheet | RECEIVED |
| | ☐ Statement of Damages | MAY 2 2 2015 |
| | ☐ Order to File Case Management Statement | 9 : 31 |
| | ☒ Alternative Dispute Resolution Policy Statement | |
| | ☐ Deposition Subpoena for Production of Business Records | |
| | ☐ Notice of Consumer or Employee and Objection and check for $15.00 | |
| | ☐ Notice of Assignment & Case Management Conference | |

| Process Server's Name: | Tony Leyva |
| Name of Company: (Include business name, address, and telephone number) | River City Process Service |
| Receptionist/ Security Signature: | C - HER |

## FOR SERVICE DEPUTY'S USE ONLY

| Forwarded to: | Priscilla Locas, JOAS | Date Forwarded: | 5/22/15 |
| Name of Service Deputy, section, and telephone number: | Nikki Colbert , F.CS., PR   916 323 8429 |
| NOTES: | |

The attached document(s) appear(s) to be the responsibility of your section; if they are **not**, please return them to the service deputy named above, noting the section to which they are to be directed.



(Rev. 5/2004)